THE PARK CITY YACHT CLUB *vs.* THE CITY OF BRIDGEPORT.

Third Judicial District, New Haven, January Term, 1912.
PRENTICE, THAYER, RORABACK, WHEELER and BENNETT, Js.

It is a general rule of law that an owner of property abutting upon a street can recover damages for a direct injury to his right of access, that is, one which is special and peculiar to him, differing from that suffered by him in common with the public, not merely in degree but also in kind.

The plaintiff's property abutted north upon a highway and west upon an arm of Bridgeport harbor. Travel westward was along the highway upon a solid causeway over the water. The common council of the city of Bridgeport, pursuant to charter provisions, adopted and carried to completion a public improvement consisting primarily of the widening of the highway, but involving also the building of a bridge north of said causeway over that portion of the harbor. Incidentally the improvement involved the destruction of the causeway and the abandonment of that portion of the highway, the practical abandonment of a portion of the highway in front of the plaintiff's premises, and the raising of the road-bed and approaches

Park City Yacht Club *v.* Bridgeport.

to the new bridge above the level of the plaintiff's premises, so that its property was left in a *cul-de-sac,* access from two directions was cut off, and travel to and from the property was seriously interfered with. All of these incidental changes were contemplated by the city in the adoption and execution of its plan of the public improvement. In a charter proceeding for the assessment of benefits and damages, it was claimed in behalf of the city that there was involved only the direct effect upon the plaintiff's property of the widening of the highway; and an assessment of special benefits was made against it. The defendant's charter provided for an appeal, and gave to the Superior Court the power to "confirm, annul, or modify the said assessment, or to make such order in the premises as equity may require." Upon such appeal to the Superior Court it was *held:*—

1. That the Superior Court in this proceeding had jurisdiction to consider the physical changes in front of the plaintiff's premises as affecting the value of its property, as was adjudicated by the former opinion in this case (81 Conn. 67).

2. That the plaintiff was entitled to recover damages resulting from such physical changes.

3. That under the peculiar conditions of this case such damages would include the injurious effect upon the plaintiff's property from the diversion of travel.

To the general rule that the vacation of a part of the street which leaves property abutting on the remaining part with access to the system of streets constitutes no actionable injury, there is an exception in favor of the property owner placed in a *cul-de-sac* with access to the system of streets in one direction wholly cut off. The facts in this case considered and found to come within the exception.

That the city in the execution of its plan for this public improvement contemplated the physical changes alleged to have affected injuriously the plaintiff's property was a relevant fact; and the history of the building of the bridge and the making of the changes in the highway was evidence properly admitted to prove that fact.

Argued January 23d—decided April 9th, 1912.

APPLICATION in the nature of an appeal from an assessment of special benefits on account of the laying out and widening of Stratford Avenue in Bridgeport, brought to and reserved by the Superior Court in Fairfield County, *Curtis, J.,* upon a finding of facts, for the advice of this court. *Judgment advised for plaintiff.*

*John W. Banks,* for the plaintiff.

*James A. Marr* and *John S. Pullman*, for the defendant.

WHEELER, J. The record in this case when before this court upon a former occasion (81 Conn. 76, 70 Atl. 631) contains a statement of facts substantially similar to those of the present record, by which it appears that:—

The plaintiff is a yacht club, owning and occupying a clubhouse upon the south side of Stratford Avenue in Bridgeport and on the easterly bank of an arm of the harbor, which was crossed by Stratford Avenue by means of a solid stone causeway. Acting under its charter and the various votes and orders of its common council, committees, and boards, all of which appear in detail in the opinion in that case, the city tore down, in 1901 and 1902, the part of this causeway just west of plaintiff's premises and north of the present roadway in front of said premises, and laid out a highway and constructed a bridge north of the causeway, being parallel with said causeway but much higher in grade and having a high and immovable railing along its south side and extending one hundred and fifty feet east of the entrance to the clubhouse. South of the bridge is a gap of water twenty-three feet wide, left by the tearing out of the causeway. The traveled way remaining over the old causeway is only twenty-four feet wide. The plaintiff's property is thus left, as a result of this improvement, on a *cul-de-sac.*

The former finding did not state directly whether or not the improvement ordered by the city contemplated a construction such as that in fact made. The present finding sets forth in detail the history of the building of the bridge and of the changes actually made, as evidence received to show that at and before the layout and appraisal the city contemplated the construction of

the bridge and the physical changes in front of plaintiff's premises, and finally it sets forth the ultimate fact that this "was contemplated by the city before the said layout and appraisal." The court reserved the question whether the history and facts showing what use the city contemplated making of Stratford Avenue as widened should have been excluded.

Two principal questions have been urged in argument: (1) That the Superior Court could not in this proceeding consider the effect upon the plaintiff's property of the physical changes proved. (2) That the damages suffered by the plaintiff by reason of these physical changes and by reason of diversion of travel are not recoverable.

In the former opinion we held (p. 80) that "the application alleges, in substance, that the improvement in question, namely, the layout, alteration, exchange, discontinuance, and enlargement of Stratford Avenue, contemplated such a construction and working of the highway established in place of the one previously existing, that the plaintiff would be largely shut off from free and direct access from its adjoining property to the main traveled path of the highway," and that "the application appears to have been tried to the court upon the denial of these allegations."

The opinion recites the proof of physical changes made by the city subsequent to the confirmation of the assessment which accorded with the contemplated changes as alleged in the application, and says (p. 82): "The finding does not state directly whether or not the court found to be true the allegation of the complaint, that the improvement ordered by the city contemplated a construction such as that proved upon the trial. It would perhaps appear from the memorandum of decision that the fact alleged was a fair inference from the facts proved."

Upon the application and facts found, the trial judge had held that "the only question open upon this proceeding is the effect of the widening of Stratford Avenue," and that in consequence of this ruling "he did not in fact estimate the effect of said changes, other than the widening of said highway, upon the value of the appellant's property." The basis of the ruling was that the scope of the application was limited by the vote of the common council to the widening of Stratford Avenue, and hence other physical changes were not elements of damage to be considered in this proceeding. This was the important question involved in the appeal reported in 81 Conn. 76, and was the most strongly argued of the questions presented on this reservation.

After reciting the various provisions of the charter and the proceedings thereunder, we say in our former opinion (pp. 78, 83): "This action of the common council contemplated a layout of the public improvement previously resolved upon by the common council, by which Stratford Avenue was altered, exchanged, discontinued and enlarged, as set forth in the report. . . . And in this case that improvement, as established in front of the plaintiff's premises, was a highway involving an alteration, extension, and practical discontinuance for public use of portions of a previously existing highway."

We held this public improvement was of a very peculiar nature, and under this application, based, as it must have been, upon the action of the common council in instituting the improvement as contemplated by the city, the Superior Court was "bound to consider any injurious effect upon the value of the plaintiff's property which might result from the contemplated, peculiar, construction of the highway, as well as any beneficial effect which might result from other causes, in determining whether or not the whole effect of the

improvement was to specially benefit the plaintiff," and that "the provisions of the charter do not so limit the jurisdiction of the court."

We thus held that, under this application, all physical changes contemplated by the improvement should have been considered by the trial court, and that the record·showed by inference that these physical changes had been contemplated by the improvement. Because of this we held the error of the trial court harmful. That no objection had been made to the proof of these physical changes was unimportant. We held them to be relevant and material to this action, otherwise we should not have deemed the failure of the trial court to consider them erroneous.

This action is a retrial of the same application, with a denial of the allegations of physical changes contemplated by the city.

The material facts found are the same as on the former trial, with the addition of facts showing the history of the improvement, and that the city contemplated the construction and physical changes which we said was perhaps "a fair inference from the facts proved." As we have seen, we held that the Superior Court had jurisdiction in this proceeding to consider the effect of all of said physical changes upon the plaintiff's property. The former decision upon this point must be accepted as the law of this case. It follows that all of this evidence was properly received.

One other question is reserved which was not specifically included in our former decision: Whether, in assessing damages, the diversion of travel from passing the plaintiff's premises is an element to be considered. As an abutting owner, the plaintiff has a special and peculiar interest in the street fronting his premises. *Cullen* v. *New York, N. H. & H. R. Co.*, 66 Conn. 211, 226, 33 Atl. 910. We have spoken of these rights col-

lectively as the easement of access to the premises of an owner. *Newton* v. *New York, N. H. & H. R. Co.*, 72 Conn. 420, 426, 427, 44 Atl. 813.

It is a general rule of law that the owner can recover damages for a direct injury to his right of access—one which is special and peculiar to him, differing from a general damage suffered by him in common with the public, not merely in degree, but also in kind. This right to compensation arises either through constitutional prohibition or statutory provisions.

The statutory appeal provided by § 59 of the charter of the city of Bridgeport (12 Special Laws, p. 538), giving the court the power to "confirm, annul, or modify the said assessments, or make such order in the premises as equity may require," is certainly broad enough to include all cases of damage within this general rule. Whether it would include cases not within the rule, we need not now consider.

The vacation of a street closes the lots fronting upon it and destroys the owners' access. The vacation of a part of a street does not ordinarily permit a recovery to an owner fronting on another part of this street. And this is true, even though it result in some inconvenience to his access, or compel a more circuitous route of access, or a diversion of travel in front of the premises, and a consequent diminution of value.

To this general rule there are exceptions, and the leading case of *Smith* v. *Boston*, 7 Cush. (Mass.) 254, 256, 257, recognizes their existence. Chief Justice Shaw, in discussing this rule, said: "We do not mean to be understood as laying down a universal rule." *Newton* v. *New York, N. H. & H. R. Co.*, 72 Conn. 420, 426, 427, 44 Atl. 813, is an example of the application of the general rule. There, the improvement did not change the highway in front of the plaintiff's premises, nor cut off travel from either direction. It merely required the

distant travel from the south to take a somewhat longer course, and affected his property no differently than all other property on the street.

The case before us presents an entirely different set of facts; indeed, the physical changes resulting from this improvement are of a most unusual character, and make the case a clear exception to the general rule. The plaintiff's premises are in a *cul-de-sac,* and the traveled way remaining is so narrow as to prevent ordinary modern travel coming to these premises, unless it backs out the one hundred and fifty feet to the main highway. Access to this property by travel from the west is destroyed, access to it from the north is prevented, and from the east is seriously interfered with. All traffic to and fro in front of plaintiff's premises, is absolutely shut off. In many ways this is a practical discontinuance of the highway.

The vacation of a part of a street which leaves property abutting on the remaining part of the street with access to the system of streets in either direction has generally been held to constitute no actionable injury. But the vacation of a part of a street which destroys all access by property abutting on the remaining part of the street to the system of streets in one direction, thus putting the property on a *cul-de-sac,* has generally been held to constitute an actionable injury. *Johnston* v. *Old Colony R. Co.,* 18 R. I. 642, 29 Atl. 594; *Chicago* v. *Burcky,* 158 Ill. 103, 109, 110, 42 N. E. 178; *Highbarger* v. *Milford,* 71 Kan. 331, 340, 80 Pac. 633; 1 Lewis on Eminent Domain (3d Ed.) § 198, p. 368.

The destruction of and interference with access to this property could not help but injuriously affect its value. The diversion of travel must be, as the court has found it to be, a large element of damage, and it ought to be included in the assessment of damages.

The exception to the general rule, applying to prop-

erty placed in a *cul-de-sac,* is in our judgment necessary to relieve a somewhat harsh rule of law of a part of its rigor.

The Superior Court is advised to render judgment setting aside the assessment of benefits made by the board of appraisal, and awarding the plaintiff damages above benefits in the sum of $1,200.

In this opinion the other judges concurred.